UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO 04-

HEIDI K. ERICKSON
*Plaintiff*



v.

MEMORANDUM OF LAW IN SUPPORT ON MOTION FOR PRELIMINARY INJUNCTION

COMMITTEE FOR PUBLIC COUNSEL SERVICES (CPCS), ET AL
*Defendants*

1. Plaintiff relies upon her filed herewith Verified Complaint and related federal cases 03-CV-10785 (RCL) and 03-CV-10460 (NMG) in her pursuit to restrain the State Court from conducting a criminal proceeding undertaken in bad faith and conducted to deprive Plaintiff due process and her constitutional protections.

2. Plaintiff states that she has repeatedly requested adequate defense counsel, while Defendants' CPCS ignored her pleas, her case spoiled, her defenses rotted and the Police corruption escalated. The prosecution destroyed evidence the 911 police communications between multiple state agencies over a 9 hour period while Defense; Public Officials subpoenaed to court refused to show and the judge refused to enforce the subpoenas while the defense attorney did not make an argument to ensure the production of the testimony evidence, a police officer made incredible statements testifying and changing his story, evidence was destroyed, and generally Plaintiff was denied her Constitutional guarantees by not only the deprivation of effective counsel but by failures of due process. Plaintiff's rights have been violated by the Defendants under color, by their extreme neglect in their duties and responsibilities to the point that their actions conspired with the District Attorneys Offices to deprive Plaintiff her liberty, discriminate, make her look scornful in the eyes of the public and to defame her credibility.

**FACTS**
PLAINTIFF IS DENIED HER CONSTITUTIONAL PROTECTIONS
INEFFECTIVE DEFENCE COUNSEL, EXCULPATORY DISCOVERY, SPEEDY
TRIAL, 4th AMENDMENT VIOLATIONS etc.

3. By June 30th, 2004, almost one full year from the date Plaintiff was arraigned (July 1st, 2003) and appointed an defense counsel, Plaintiff had been screened for indigency at least 4 times by the Judges at the Boston Municipal Court harassing her, each time found qualified and allowed to proceed *in forma pauperis*, the then Defense Counsel had been refusing to both seek funds to hire investigators and/or completely lacked zeal to prompt an expert witness to review the animals (the alleged cause of the criminal charges of animal cruelty) but in addition the defense counsel refused to secure the exculpable evidence seized by the Commonwealth during its unwarranted search of my apartment on Beacon Hill (4/27/03), its complete seizure of the entire contents of my apartment including exculpable evidence and blatantly ignored requiring witness to testify and evidence brought to a sham hearing on a motion to

1

suppress conducted on 4/5/04. Plaintiff's numerous complaints left unanswered she sent a letter (Exh. 1) to the Defendants requesting adequate defense counsel, and that the current defense counsel was ineffective and damaging to my case. The CPCS ignored my requests meant to deprive me of my Constitutional protections and to conspire with others it knew would deprive me of my liberty.

4. On July 8th, 2004, and since March 2004 in front of the Boston Municipal Court requesting adequate defense counsel, out of desperation and fear of escalating harms, not hearing from the Defendants for months and as each day the inadequate defense counsel was damaging her case and while Plaintiff was preparing this Complaint, Preliminary Injunction she under extreme duress requested that the Boston Municipal Court discharge her court appointed Defense counsel. This Motion had followed several requests of the Judges at the Boston Municipal Court for assignment of adequate defense counsel where at one point a Judge Ordered that Defendant Bennett call Him about the assignment – Defendants refused.

5. Justice Steven's wrote in his dissent in *Mickens v. Taylor* 535 US 162 ..in my judgment, the right to conflict-free counsel is just as firmly protected by the Constitution as the Defendant's right of self-representation recognized in *Faretta v. California*, 422 US 806, 45 L.Ed. 2d 562, 95 S.Ct. 2525 (1975) "For the "right to counsel guaranteed by the Constitution contemplates the services of an attorney devoted solely to the interests of his client," *Von Moltke v. Gillies*, 332 US 708, 725, 93 L.Ed. 309, 68 S.Ct. 316 (1948).

6. When an indigent Defendant is unable to retain his own lawyer, the trial judge's appointment of counsel is itself a critical stage of a criminal trial. At that point in the proceeding, by definition, the Defendant has no lawyer to protect his interests and must rely entirely on the judge. For that reason it is "the solemn duty of a ..judge before who a Defendant appears without counsel to make a thorough inquiry and to take all steps necessary to insure the fullest protection of this constitutional right at every stage of the proceedings." *Von Moltke*, 332 US at 722

7. "When a Defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas…This allocation can only be justified, however, by the Defendant's consent, at the outset, to accept counsel as his representative. An unwanted counsel 'represents' the Defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by t he Constitution, for, in a very real sense, it is not his defense." *Faretta*, 422 US 806 at 820.

8. Over the course of the year Defense Counsel and Defendant were both informed of Plaintiff's disability and that Plaintiff's dog was used by her to accommodate her disability, the dog highly trained, valuable and uniquely trained for her, that she was suffering the deprivation of this reasonable accommodation (Exh.  ). Despite Plaintiff's repeated requests and announcement that the CPCS and the District

Attorney's Office had no right and were discriminating against her, including the fact that she was not faced with charges were the dog was evidence (Exh.  ) the CPCS and Defense Attorney completely ignored Plaintiff's interests, rights and defenses harming her. It was not until then Defense attorney informed Plaintiff she would file a Motion for Return of Property on September 11, 2003 when the parties were in Court. Defense Attorney had the paperwork (Motion for Return of Property (Exh.  ) and Plaintiff's Affidavit (Exh.  ) discussed with the DA about her Motion and then failed to file the Motions misrepresenting to Plaintiff that she had filed the Motion and it would be heard the next time they were in Court in October 2003 but then instead filed the Motion for Return of Property (Exh.  ) on September 22nd, 2003 in doing so waiting until after the Commonwealth had filed a criminal complaint against Plaintiff on September 19th, 2003 (Exh.  ) claiming animal cruelty on the dog and additional cats in a concerted and conspired effort to deprive Plaintiff her property, reasonable accommodation and adequate, zealous effective representation.

9. Since July 1st, 2003 when Defense Counsel had been first appointed to defend Plaintiff on one count of animal cruelty naming one grey kitten (Exh.  ) Defense Counsel was given numerous opportunities to secure the medical records on the one grey kitten that was the Commonwealth's evidence in the original criminal complaint of July 1st, 2003. Defense Counsel was ineffective in obtaining any medical records until March 2004 – 9 months later! At that time in March 2004 it was revealed that the Commonwealth had euthanized said grey kitten in August 2003, knowingly withheld this information from Defense Attorney and then refiled criminal charges against Plaintiff in October to include the dog and 4 white cats (Exh.  ).

10. Plaintiff was repeatedly requesting Defense attorney to proceed with a defense as to prosecutorial misconduct, based not only on the prosecutions destruction of the 9 hours of police communications but by its refusal to give the names of persons who entered Plaintiff's apartment without a search warrant, production of the animals medical records. The Defense Attorney unprofessional conduct refused to secure the reasonable obvious and exculpable evidence and therefore failed to effectively proceed to zealously and adequately represent Plaintiff.

11. In October 2003 the Commonwealth had successfully charged Plaintiff with additional criminal charges naming the Dog and 4 other cats while it withheld information as to the destruction of evidence and exculpatory medical records including that the Commonwealth's vet in October 2003 was recommending the euthanasia of the dog mainly due to the lack of proper husbandry that the shelter was providing.

12. The Prosecutor prevented Defendant's expert veterinarian to examine the animals prior to its destruction of the evidence should have given rise to an argument of prosecutorial misconduct and grounds for dismissal Defense counsel didn't and was ineffective depriving Plaintiff's additional constitutional protections.

3

13. Plaintiff points to related Federal cases docket No. 03-CV-10785 Erickson v. Reilly et al, and 03-CV-10460 Erickson v. Trial Court et al the later included Defendant's argument that based on *Rocker-Feldman* Doctrine and/or abstention under *Younger* the Federal Courts were impotent to hear Plaintiff's federal claims, grant relief or enjoin the state trial court. Plaintiff states that because she is being deprived her Constitutional guarantees not exclusively by the deprivation of effective counsel but also her 4th, and 14th Amendments while she requested review on a Motion to Suppress Evidence Obtained from an Unwarranted Search of her Beacon Hill apartment the review hearing on such a motion was tainted by acts of bad faith, not only by ineffective Counsel but by the Commonwealth's bad faith too when the Prosecutor by violations of Prosecutorial Conduct as mentioned hereinabove and those other Plaintiff claims pursuant to the Mass Rule of Profession Conduct 3.8 (g), (j) intentionally avoiding pursuit of evidence because the prosecutor believes it will damage the prosecutor's case or aid the accused (Exh.  ) and for making extrajudicial comments that have a substantial likelihood of heightening public condemnation of the accused, that the Prosecutor argued at the hearing on the Motion to Suppress by its repeated statements to the Judge that all Defense witnesses were not those involved with the initial unwarranted search of her Beacon Hill apartment. It appears that Defense Counsel had requested discovery (Exh.  ) of those named persons involved in removal of the security grate that covered Plaintiff's window and that this Discovery was served 9 months before the hearing on the Motion to Suppress Evidence Obtained from a Warrantless Search but the Defense attorney failed to adequately secure compliance to the discovery upon the Commonwealth, District Attorney's Office who failed to produce the names.

ABSTENTION and the ROCKER-FELDMAN DOCTRINE

14. "Abstention is the exception and not the rule, abstention from the exercise of federal jurisdiction is appropriate only in certain limited circumstances. *Colorado River Water Conservation District v. United States*, 424 US 800, 813, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976). Abstention is a judicially-created doctrine under which a federal court will decline to exercise its jurisdiction so that a state court or state agency will have an opportunity to decide the matters at issue. *Heritage Farms, Inc. v. Solebury Township*, 671 F.2d 743 (3d Cir. 1982), cert. Denied, 456 US 990, 102 S. Ct. 2270, 73 L. Ed. 2d 1285 (1982).

15. Under *Younger v. Harris*, 401 US 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971), abstention is appropriate when federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings... *Colorado River, supra*. Younger abstention arose primarily from the notion of comity and reflects "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Gwynedd Props. Inc. v. Lower Gwynedd Township, 970 F.2d 1195, 1200 (3d Cir. 1992) (quoting Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 US 423, 431, 102 S. Ct. 2515, 73 L. ed. 2d 116 (1982)). But there are exceptions to Younger, these apply here.

16. The Third Circuit reviewed the three prongs that must be meet in order for a federal court to abstain under the Younger doctrine: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. *Middlesex, Supra.* at 432. Even if the necessary three predicates exist, however, Younger abstention is not appropriate if the federal plaintiff can establish that the state proceedings are being undertaken in bad faith, or if there are other extraordinary circumstances, such as herein.

17. Plaintiff states that the state proceedings conducted at the Boston Municipal Court against her do not allow her to raise, adequately and effectively, her federal claims and that the underlying criminal charges are based on a flagrantly unconstitutional statute as Plaintiff argued to the BMC on 7/22/04 the statute old, archaic and that the wording in GL Ch 272 sec 77 vague and unconstitutional

18. In addition, and because of the deprivation of adequate defense counsel Plaintiff is deprived her Constitutional protections. The BCM stymies her efforts and denies Plaintiff's constitutional protections requiring a finding at the Suppression Hearing were all documents entered state the entry was without a search warrant to retrieve a barking dog, a finding that the police testimony inconsistent with his actions stating he entered for exigent circumstances because he believe Plaintiff injured but only entered and retrieved the dog did not check any other rooms of the Plaintiffs apartment. Any other judge in this country would have found the police officers testimony incredible and not supporting exigent circumstances warranting a warrantless search and up held Plaintiff's constitutional protections of the 4th Amendment, but this Court the BMC and the judges therein employees of the Mass. Trial Court who are named Defendants in Plaintiff's related federal suit docket no. 03-10460 NMG and 03-10785 RCL.

19. Plaintiff is not afforded her constitutional protections in the Boston Municipal Court and abstention inappropriate as made evident when she requested a re-hearing on her Motion to Suppress Evidence Obtained from a Warrantless Search argued originally by an ineffective defense counsel – it was denied. All these actions unconstitutional, *Anthony v. Council*, 316 F.3d 412 (3d Cir. 2003) and in *Associates in Obstetrics & Gynecology v. Upper Merion Township* 270 F.Supp. 2d 633 (2003).

20. Abstention doctrine is precluded in the light of bad faith, as is occurring with the case at bar and the numerous instances of denial and deprivations of due process and fair adjudication, effective defense counsel and conspiracy. The application of the abstention doctrine pursuant to Younger and/or Rocker-Feldman arguably inapplicable. Quiet clearly abstention pursuant to Younger and/or Rocker-Feldman is not relevant in this context as the injunction sought would not have prevented or disrupted any state judicial proceedings adjudicated in good faith while allowing Plaintiff her constitutional protections.

19. It is lack of effective counsel that have caused Plaintiff added deprivations of Constitutional guarantees, the failures of an adequate hearing, production of admissible evidence, admissible testimony and adequate zealous defense. Excerpts of BMC case: a & b

    a. While Engine 4 responded at the behest of the Area 1A Boston Police Department to procure a warrantless search of Defendant's apartment all testimony from those involved in the initial entry absolutely necessary for the hearing on the Motion to Suppress. And investigation as to the relevant facts surrounding their entry should have been investigated prior to a hearing on those facts while all other reasonable Defense Counsel would have ensured the investigation and testimony. Defense Attorney failed, prejudicing and violating her 6th Amendment rights.

    b. Defendant asserts that the Commonwealth has intentionally withheld the Boston Police Communications and/or Boston Central Communications tapes and that this Department has held and still holds all the communications between the Departments, has intentionally withheld the taped communications and failed to produce the Tape Librarian for testimony and production at the Defendant's hearing on her Motion to Suppress. By failure of ineffective Counsel Defendant was deprived an adequate hearing, materially relevant facts, evidence and testimony to effectively support her Motion to Suppress in violation of her protected 6th Amendment rights.

20. By failing to investigate, illicit and/or secure materially relevant testimony and secure materially relevant evidence for the suppression hearing the Plaintiff's case was irreparably harmed, and prejudiced by the ineffective and inadequate representation from her defense counsel in violation of her protected constitutional rights under the 6th Amendment. It is more then likely, if the evidence and witness were present the hearing would have produced dramatically different results.

21. During the hearing on the Motion to Suppress, who ever initially entered and or partook in the initial entry should have testified and/or at least been investigated and/or interviewed. The failure of Defense Attorney to effectively secure both their testimony and investigation deprived Plaintiff her guaranteed rights. It is of such great injustice upon Plaintiff to have been prejudiced by the lack of effective, zealous and adequate counsel that this Motion should be allowed as a matter of law and conscience. Counsel's failures prejudiced Erickson's defense and to establish prejudice, a Erickson must show that there is a reasonable probability that, but for counsel's unprofessional errors, the proceeding's result would have been different *Strickland v. Washington*, 466 US 668, at 694, 80 L.Ed. 2d 674, 104 S Ct 2052. It would be fair to argue that as a result of the absence of the tape, the absence of the report, the absence of the testimony from several witnesses and possibly others Judge decision may have been different.

22. The Court should grant a preliminary injunction in favor of the Plaintiff where: (a) the Plaintiff will suffer injury if the injunction is not granted; (b) such injury outweighs any harm which granting injunctive relief would inflict on the defendants; (c) the

Plaintiff has exhibited a likelihood of success on the merits, and; (d) the public interest will not be adversely affected by the granting of the injunction. *Planned Parenthood League of Massachusetts v. Bellotti*, 641 F.2d.1066, 1009 (1st. Cir. 1981); *Narragansett Indian Tribe v. Guilbert*, 934 F.2d. 4, 5 (1st Cir. 1991). In balancing the elements of this test, the Plaintiff is entitled to the relief she seeks if:

> The harm caused Plaintiff without the injunction, <u>in light of</u> the Plaintiff's likelihood of eventual success on the merits, outweighs the harm the injunction will cause Defendants.

*United Steelworkers of America v. Textron, Inc.*, 836 F.2d. 6, 7 (1st Cir. 1987), citing *Vargas-Figueroa v. Saldana*, 826 F.2d. 160, 162 (1st Cir. 1987) (emphasis original). The more foreseeable the Plaintiff's ultimate success on the merits, the less weight the Court accords the Defendant's prospective loss. *SEC v. World Radio Mission*, 544 F.2d. 535, 541 (1st Cir. 1976). The Plaintiff here has met these standards.

23. The Plaintiff will surely suffer grave injury, a deprivation of a protected right to Constitutional guarantees the potential for the loss of liberty and due process, while the harm that is placed upon Defendants CPCS for it to appoint an adequate zealous and competent attorney or direct those funds to the federal court negligible to none.

24. The harm that is placed upon the Boston Municipal Court from hearing Plaintiff's criminal proceeding negligible to none and because of heavy caseloads it would more likely not suffer from one less case to hear but invite the federal court's enjoining and would be unable to demonstrate that it could be harmed in a greater degree then Plaintiff by the deprivations of her Constitutional protections that is corruptly condones and by its Judges gets away with.

25. The CPCS will be unable to demonstrate that it will be harmed in greater degree then that which Ms. Erickson is suffering from the deprivation of effective counsel.

### IRREPARABLE HARM

26. Deprivation of a protected interest in a Constitutional guarantee is surely an irreparable harm, as is the deprivation of liberty one of the most cherished rights that every American hold close to life. If the injunction is not granted, Plaintiff's Constitutional guarantees will clearly be deprived while Plaintiff may face total deprivation of her liberty from the lack thereof of Constitutional protections.

### BALANCING OF HARMS

27. Balancing the irreparable harm to the Plaintiff and her likelihood of success on the merits against any potential harm to the Defendant or public interest, the scale greatly tips in favor of the Plaintiff. The Plaintiff is qualified to a court appointed effective defense counsel and has been suffering the consequences of a prolonged deprivation of her rights, an accommodation her disability, effective counsel and threatened with the potential of the total loss of liberty. Plaintiff clearly seeks to restrain the Defendants and live free from oppressive government deprivations while seeking her

7

rights pursuant to the 14th Amendment to the US Constitution. Clearly, the balance of harms tips in favor of the Plaintiff.

28. Furthermore, the greater the irreparable harm shown by the Plaintiff, the lower her burden is with respect to success on the merits.

> Since the goal is to minimize the risk of irreparable harm, if the moving party can demonstrate both that the requested relief is necessary to prevent irreparable harm to it and that granting the injunction poses no substantial risk of such harm to the opposing party, a substantial possibility of success on the merits warrants issuing the injunction.

*Packaging Indus. Group, Inc. v. Cheney, supra*, 380 Mass. At 617, n.12. Clearly, Plaintiff faces immense irreparable harm (the loss of her companions). Granting the injunction poses no threat to anyone. Therefore, the Plaintiff need only demonstrate a substantial possibility of success, which she has clearly shown, for the Court to issue a Preliminary Injunction let alone a temporary order of 10 days until it issues a Preliminary Injunction.

29. The Court should grant a preliminary injunction in favor of the Plaintiff where: (a) the Plaintiff will suffer injury if the injunction is not granted; (b) such injury outweighs any harm which granting injunctive relief would inflict on the defendants; (c) the Plaintiff has exhibited a likelihood of success on the merits, and; (d) the public interest will not be adversely affected by the granting of the injunction. *Planned Parenthood League of Massachusetts v. Bellotti*, 641 F.2d.1066, 1009 (1st. Cir. 1981); *Narragansett Indian Tribe v. Guilbert*, 934 F.2d. 4, 5 (1st Cir. 1991). In balancing the elements of this test, the Plaintiff is entitled to the relief she seeks if:

> The harm caused Plaintiff without the injunction, <u>in light of</u> the Plaintiff's likelihood of eventual success on the merits, outweighs the harm the injunction will cause Defendants.

*United Steelworkers of America v. Textron, Inc.*, 836 F.2d. 6, 7 (1st Cir. 1987), citing *Vargas-Figueroa v. Saldana*, 826 F.2d. 160, 162 (1st Cir. 1987) (emphasis original). The more foreseeable the Plaintiff's ultimate success on the merits, the less weight the Court accords the Defendant's prospective loss. *SEC v. World Radio Mission*, 544 F.2d. 535, 541 (1st Cir. 1976). The Plaintiff here has met these standards.

WHEREFORE Plaintiff respectfully requests this Honorable Court grant her the relief she seeks, and all other relief it deems fair and just.

Respectfully submitted by: Heidi K. Erickson, July 26th, 2004

I sign hereon attesting that the above paragraphs and the attached Memorandums are true under the pains and penalties of perjury and that today I have caused a true copy upon defendants.